The next piece for argument is 24-2300, Manufacturing Resources v. Squires. Mr. Reed, good afternoon. Good afternoon. May it please the Court. David Reed for MRI. Claim 12 recites cooling using a combination of a closed loop and an open loop, where an open loop passes along the backlight of an LCD display. There are two grounds here, the Karpenin ground and the Ota-Marumoto combination. I plan to address both, but I'll begin with the Karpenin ground and the APA issue. The board construed along to mean coextensive with and in sufficient proximity to the backlight without giving MRI notice and an opportunity to respond under the new construction. In the petition, Samsung construed along the backlight to mean in thermal communication with the backlight, and the board rejected Samsung's construction, rightfully so, but came up with a different construction, the coextensive with and insufficient proximity to construction. MRI never had the opportunity to present. Claim construction, I don't think that, you think that close proximity was in the initial claim construction? Your Honor, it was, that construction was rendered as part of the analysis of the Karpenin ground, but the USPTO hasn't disputed that that is claim construction, and we cited to the Microsoft versus IPA case in which the board, this court found that the board construed a claim in the context of analyzing the prior art, and we believe that's what the board was doing here when it determined the scope of the claim. The board's analysis established the scope and meaning of the claim. Assuming that is claim construction, wasn't it basically your construction other than about you wanted to also exclude intervening structures? No, Your Honor. Our construction was that the, that along the backlight meant next to the backlight, and yes, we believe that that means that it excludes intervening structures. We believe that sufficient proximity and coextensiveness, that's just a different concept, and is one that we never had the opportunity to address because... You asked for plain and ordinary meaning, and also that intervening structures should be excluded. Did I misunderstand your position? So in our claim construction section of our patent owner response, we were faced with Samsung's theory that along the backlight meant in thermal communication with the backlight, and that was the theory under which Samsung had argued obviousness. So our claim construction section was focused on rebutting that construction and that theory under which the obviousness theory applying that construction. Later in our patent owner response, we, in the context of addressing the carpenting ground, we affirmatively explained our understanding that, and this is on page 401 of the appendix, that the claim uses the positional term along to claim the inventive cooling feature of directly cooling the backlight using ambient air passing next to the backlight. And then four pages later on page 405 of the appendix, we explained that that does not encompass a flow path that is separated from the backlight by another flow path and other intervening structures. So it seemed like the board understood that to mean that your position was basically plain and ordinary meaning, but certainly that along connoted a positional relationship as opposed to being satisfied more broadly just by a thermal communication, right? Yes, we agree that the term along in our position was that the term along was positional, it's a preposition, and not connoting thermal communication, which is addressed elsewhere in the claim by the coolable limitation. But the dispute really is, well, what is then the position? And we said the position means next to the backlight, the flow path being next to the backlight, and the board disagreed with that and instead determined that it's enough if the flow path is sufficiently proximate and coextensive with the backlight. And that's brand new. We never saw that. We get a lot of complaints about the APA, and you say it's brand new. One, we've got a discrete thing going on here. This isn't market science. This is really along the backslot side and plain and ordinary meaning, and the board could have easily said, I'm giving it the plain and ordinary meaning, and then said, and implying the ordinary meaning, that means coextensive and sufficient proximity, because that seems like a genuine application of the term along the backside. But there's a statement in this from the hearing. It's in the appendix at 621 and 622, that the APJ, I mean, these hearings are valuable, I think. The APJ says very astutely and clearly, you've got one side about thermal stuff. That's way off. And you've got this other side. And then he kind of auditions what he's going to say in the claim construction. So to say this came at you and you had no idea, he said, you've got extreme positions. There's a middle ground. Your issues, I think, stemmed from the fact that there were, as Judge Stark referred to, there are structures in between. That's what you wanted to get rid of, right? Because that was the prior art that had those structures, right? Well, we believe that that accurately encompassed or captured the invention. But yes, we did not believe that. We didn't believe that it covered the prior art. That's correct. Okay. And the other side clearly did believe that it covered. I don't think this came out of nowhere. And you were asking for plain and ordinary meaning. I think adopting even the plain and ordinary meaning, the board could have said, what would you have done if the board had said, we agree, it's plain and ordinary meaning. But our view of plain and ordinary meaning is close proximate or sufficient proximity and coextensiveness. That's a great question, Your Honor. And with notice, MRI could have argued that Karpenin's open loop was not coextensive. At Appendix 976 of the appendix is Figure 3 of Karpenin. It includes flow controllers that form flow ducts, such that the open loop of Karpenin only passes behind a portion. And you didn't know to make that argument in all the discussion that was going on here? And the board was clearly not clear what the middle ground was. They're saying it's a lot of gray area. Wouldn't that have been your key, like, well, I better get to the heart of what I need them to say about this? No, Your Honor. We had no notice. The ground that we were presented with in the petition, which governs the scope of the proceedings, is Samsung's theory, which was the Karpenin open loop was along the backlight because it was in thermal communication. But the question here isn't whether it was at the petition. It's whether the board has the authority to do something that's not precisely what one side or the other is asking. And the answer is it does. And there needs to be, though it can't come out of nowhere. The parties have to have a sufficient opportunity to present their arguments relating to that definition. And I'm not seeing where they didn't. Alluding to a new construction at oral argument is, and then treating that as sufficient notice or opportunity to respond is prejudicial because we didn't have the chance to brief coextensiveness or proximity. We didn't have the chance to have our expert opine on coextensiveness and proximity. And the APA guarantees us that right. Under the APA and the Axonics decision, when the board adopts a new claim construction following institution, and here there was no claim construction at institution, parties must have adequate notice and an opportunity to respond under the new construction. And that means an opportunity to submit evidence and argument, not just to say, hey, at oral argument, we might, we think you might be wrong and we definitely think they're wrong. So how about a middle ground? And that's, that is, that's not the notice that's required in the reasonable opportunity. In the Axonics, if the ultimate construction adopted in the final written decision is sufficiently similar to the construction disputed by the parties, the board need not give the parties prior notice of the exact construction the board adopts, cited our Western Geco decision. Why is that not this case? So the two constructions that were argued by the two sides during the case, one was thermal communication, clearly proximity and coextensiveness are totally different concepts than thermal communication. The other construction was the MRI construction in which the flow path needed to be next to without intervening structure. However, the, under which Carpinen is undisputed, there was no argument would not have invalidated. Because of the intervening structure, not because of the next two. Well, that's what next to means, because Carpinen, recall, it has, well, it doesn't teach a backlight at all, but assuming the backlight is where the board found it to be, you have a backlight, then you have a closed loop, then you have a wall, and only then do you have an open loop. So that's not next to the backlight, it's separated. I'm just back to what the A.J. said at the hearing, is not put you on notice to answer this, because he says, or she says, it seems to me like along the backlight possibly and reasonably means in the same direction as the backlight, you know, along its periphery, even if it's not contacting the backlight. You know, it may set a little bit off of the backlight, but the flow still has to be along the contour of the backlight. Well, if that wasn't what you thought along the backlight was, did you come back and say, no, no, no, no, here's why you're wrong. It has to be contacting it. He previews that this is what he thinks. Isn't this very close to what the construction we're debating here about? No, Your Honor, we believe it's very different than the construction we're debating, because under our construction, under MRI's construction, Carpinen doesn't teach the limitation, and under this new construction that the board was presenting, they found that it does. And we didn't have a chance to ask our expert or put in an argument about coextensiveness, where Carpinen's open loop is not coextensive. What about, I mean, forget coextensiveness. What about, I mean, coextensiveness, your problem is it precludes your argument that you can't use it with intervening structures. That's the bottom line here. It's whether Carpinen is prior art, right, that covers this. So that's the game of the intervening structures. You knew that, right? Everybody knew that, right? So I'll say that that was the ITC's construction, the ITC in the co-pending proceeding upheld the validity of the 287 patent, because Carpinen's open loop was not along the backlight, because there were intervening structures and flow path in between. So... And you all, everybody knew that? And everyone knew that, and so Samsung was maintaining its thermal communication construction, which the ITC had rejected. But there were, those were the only two options that the parties were aware of going into the hearing. You're into your rebuttal time. Can I ask a question? I thought when the board was talking about the claim construction, I'm looking at a 16A-16, and they reached the conclusion that a long requires, they said, consistent with the disclosures on the 287 patent. And the 287 patent at 446-54 talks about close proximity. I'm sorry, on page 16, where are you? Yeah, I'm just, the question about whether or not you had any notice about close proximity. I think the analysis of the board saying that their decision as to what the scope was there, citing in the patent to references to close proximity. I'm not seeing the reference to proximity on page 16. I'm looking at, but I'm looking in the patent. Is there not a reference to proximity in the patent? The citation there is to column four, line 5046. Column four, line 46 going forward talks about close proximity. Oh, that's discussing placing the backlight in close proximity to the plenum of the closed loop such that the open loop is a constricted channel. So that is a different unclaimed feature of the invention, was to constrict that flow path of the open loop. That's not saying put the open loop close to the backlight. Indeed, in figure three, you'll see with the dotted arrows of the 287 patent that every embodiment, the dotted arrows are the ambient air, the open loop. In every example, that open loop passes right next to the backlight. Sorry, just real briefly. On page 15, the board says that patent owner advocates for applying the plain and ordinary meaning of along the backlight. Do you deny that that was your claim construction position? No, that's correct. We were arguing for the same plain and ordinary meaning that the ITC had applied. So that excluded intervening structures. But if you ask for plain and ordinary meaning and the board had an obligation essentially to determine what plain and ordinary meaning is, why is that not all within what's reasonably foreseeable so you had adequate notice? Well, on pages 401 and 405 of the appendix, we went further and explained what that plain and ordinary meaning is. So it wasn't just plain and ordinary meaning, whatever you think that is. We explained that plain and ordinary meaning was next to the backlight and did not encompass a flow path that was separated by other structures. Again, you said the ITC's claim construction included the structures or did not? So the ITC held that along the backlight, you could not separate the flow path from the backlight by intervening structures and still be along the backlight. Does that make sense? Okay, let's hear from the other side. Good afternoon, Your Honors. May it please the Court. MRI had notice of the claim construction issue with respect to the limitation along the backlight in the petition. And they also had notice how it was being applied to the carpet and prior art reference. In the petition, Samsung advocated for a broad construction, which was thermal communication in the Pat Nona response. They argued for the plain and ordinary meaning. So they had adequate notice and an opportunity to respond. They also responded in their... How firm is that adequate notice? I mean, because you advocated the thermal thing, which was rejected by the board, that was adequate notice of what the board was going to come up with in terms of its construction? I don't understand. They had adequate notice that the along the backlight limitation was in dispute and they had an opportunity to present that. I don't think your friend's disputing that. I think your friend's argument is the construction that the board ultimately came up with is one that they didn't have notice of. And I would disagree with that, because if you look at the board's construction at 816, they considered the construction proposed by Samsung, which was the thermal communication. They rejected that. They pointed to MRI's proposed construction as the plain and ordinary meaning. And then at the bottom of page 816, this is where they specify that along the backlight indicates the position of the airflow relative to the backlight and does not require contact with the backlight and is not met merely by having thermal communication. And that's basically what MRI had advocated for, the plain and ordinary meaning. What they say, yeah, except that they exclude intervening structures, which is what the whole case is about with the carpeted grounds. So putting aside which construction is right, how did they have notice and an opportunity to be heard on a construction that maybe looks a lot like theirs, except it doesn't include this exclusion on which the whole case turns? Right. So they had notice of carpeting and that carpeting had these intervening structures. And in their proposed construction, if they wanted to exclude intervening structures like those in carpeting, they should have proposed that to the board instead of the plain and ordinary meaning. It wasn't until they were addressing whether carpeting teaches that along the backlight limitation that they then argued that these intervening structures didn't meet the along the backlight limitation. They say at 401 and 405, that's where you can understand what they meant by plain and ordinary meaning. You say that's not correct? That's not correct. Because if you look at those pages, that's where they're assessing whether carpeting teaches the along the backlight limitation. That's not a claim construction argument that they made to the board. And again, if you look at the oral hearing, which is also helpful in this point, they argued, the question came up, well, are intervening structures encompassed? Do you just want to give us the page number? Sure. Sorry, I've got it right here. It's A669. Yes, sir. Second volume. Yes, it's in volume two.  And at the top of the page, Judge Lee is asking, if you travel along the rear surface of the backlight, wouldn't you necessarily be contacting that backlight? What's the difference between the language that was rejected by the examiner and the language that it was amended to? And MRI says, when you talk about along, it's a positional limitation. I think along would encompass the concept of direct contact, but I don't think it requires direct contact. You could envision a scenario where the backlight has a film or something like that on it, and that's an intervening structure. Having a film or something on the backlight between the airflow passageway and the backlight, that's an intervening structure. They were arguing against a construction that required direct contact, that allowed for these intervening structures. And if that was something that they thought these intervening structures— Isn't there something else in the transcript where they expressly say intervening structures are okay? I thought there was something else beyond this testimony. I don't have anything specific. This is all we have? I don't think there's anything other than this. Okay. Yeah, this is what we cited, too, in our brief. But again, when they presented all of their claim construction arguments, and they had a patent owner response and a surreply, an expert declaration, and then this oral hearing, they never argued that these intervening structures were not encompassed by the claim language. It was only when they were mapping carpenin to teaching that limitation that they argued carpenin doesn't meet the limitation. But they forfeited the argument that carpenin doesn't teach the along-the-backlight limitation under the board's construction. So if a patent owner says our claim construction position is plain and ordinary meaning, what does that do to their right to notice of the board's ultimate claim construction? That is, everyone agrees here that this claim term was in dispute. And if you're right, and I see some evidence, for instance, 397, where MRI says we're just going to apply the plain and ordinary meaning, does that mean whatever the board says ultimately in the final written decision is the construction? The patent owner has no additional opportunity to be heard on the application of that construction because they just basically said to the board, give it the plain and ordinary meaning, and we don't know what that is? I think you have an opportunity if you think the plain and ordinary meaning means something specific, especially when you have a prior art reference that you are on notice of has these intervening structures. And that's the key issue about the case. If you think plain and ordinary meaning excludes intervening structures, you need to make that argument. But that's my question. I guess you're saying, yes, if I'm the patent owner and I say plain and ordinary meaning knowing there's this issue about the prior art and the structures, and I don't say for claim construction purposes my construction excludes those structures, then I'm not entitled to any further notice as to what the board thinks the right construction is or how to apply it. I find out with the rest of the world at the final written decision, and I never get to be heard on that. Is that right? Well, you can still be heard on it. They could have requested rehearing before the board. They're not obligated to do that. They're not obligated, but it's certainly another opportunity. If they thought the board got the construction wrong and they misinterpreted some of these arguments, that was certainly an opportunity to be heard. They chose not to. They could have requested direct review. They chose not to. Well, what do you say about his axonics point? In axonics, we said, before the board decides a case under a construction adopted after the institution decision, it must give the petitioner, in that case, so I would assume a patent owner as well, an opportunity to respond to the new construction, whether that construction was first proposed by the patent owner or the board. Is that our situation? I don't think so. This isn't a situation where the board pulled a new construction out of thin air for a limitation that wasn't in dispute. And in this case, both parties proposed constructions. The board is not limited to choosing one versus the other. It's allowed to choose the correct one. And the construction it landed on is largely the same as what MRI proposed. So again, it's really their argument is just that carpenting doesn't teach that limitation, which is not a claim construction argument. That's a fact-finding that the board made based on the evidence of record, including the carpentry reference and the expert testimony of Dr. Gillespie. Well, I still don't think that's going to satisfy your adversary. He's saying the board came up with sufficient proximity as a claim limitation and never told where it would come from. So those terms, those are not in the board's claim construction. Again, if you look at the board's claim construction, it says, along the backlight indicates the position of the airflow relative to the backlight, does not require contact with the backlight, and is not met merely by having thermal communication. The board's construction doesn't say anything about close proximity or thermal communication. Those are terms that are the coextensive of this. I'm sorry. Those are terms that the board used in describing how carpenting teaches along the backlight. The board ends up saying carpenting teaches along the backlight because the flow is in sufficient proximity in carpenting, notwithstanding the intervening structures.  In the sufficient proximity... That's saying that sufficient proximity is a claim limitation. I think they're just describing how carpenting teaches the along the backlight limitation because the limitation is it doesn't require contact and it's not met merely by having thermal communication, but it does need to be in close enough proximity so you could have some thermal communication to actually perform the cooling. But when you say thermal communication is not enough... It's not enough. There has to be something more. So assuming that there's nowhere in the patent do you learn or do you know what the something more is, the claim is indefinite, isn't it? Well, I think here we don't... I mean, you have to have some indication in the patent of if thermal connection is insufficient, what would suffice. Right. And in this case, the board said just thermal communication by itself is not enough. You need to have thermal communication plus the position of the airflow. And that's indicated in carpenting with the coextensiveness. It shows that the airflow comes in one of these ventilator slots. It goes all the way across coextensive with the backside of the backlight and then exits the flow passageway. And in the expert testimony of Dr. Gillespie... But the reason why thermal connection was no good is it could be so far away from the backlight that it would be irrelevant. Right. On the other side of the room. Exactly. If the flow path is... There has to be something in between here and the other side of the room to make the claim not indefinite when you're talking about where it is along the backlight. Right. And the board and the parties never got into the issue of, well, how close is close enough? They just said you have to be close enough to perform the cooling. Well, they say carpenting is close enough. Yeah. And I think carpenting is close enough because that is a cooling... Because it's in close proximity or it's in sufficient proximity. Right. Exactly. It's sufficient to perform the cooling step because it goes along the backlight display and it comes in contact with those cooling fins, which then bridge the gap and contact the backlight. So it does perform the thermal communication, the cooling step, but it also has the positional requirement where it's coextensive with and along the backlight. MRI says at page three of the reply brief, and I think you disagree with this, but that's what I'm just trying to confirm, the USPTO does not contend that the board's construction was materially the same as the constructions briefed by the parties. That's what they say, that you don't contend that the board's construction was materially the same as, for example, their proposal. But I'm hearing you to say, yes, we do. We basically adopted their instruction of plain and ordinary meaning. I think that's largely correct. I mean, they advocated for plain and ordinary meaning. Samsung advocated for thermal communication. The board agreed with their construction of plain and ordinary. With the patent owners. Exactly, yeah. If there's no further questions, I'm happy to yield. Thank you. If I may, Your Honors. Even if you disagree that this was claim construction, what the board was doing, and instead was fact finding, under the APA, MRI was still required to be provided the opportunity to be heard and to put evidence in under this obviousness theory that the board itself created and then adopted in the final written decision based on proximity and co-extensiveness. That was nowhere in the party's briefing, and most importantly, it wasn't in Samsung's petition. What do you say to the argument that your construction, I'm looking at it at 397, was plain and ordinary meaning, and the board's construction at 16 was essentially the same thing, and everything else you're talking about was not purely claim construction. It was just applications. So the first point is that even if it's application, we still have to be provided. You had every incentive and opportunity to provide whatever evidence you wanted as to what Carpinen meant under the plain and ordinary meaning of the term you knew was in dispute. So that theory that Carpinen was taught along the backlight because it was close enough to the backlight, that was never presented. It was only a thermal communication theory. That doesn't mean, what you're suggesting is that unless the board adopts everything that the petitioner said, then there's an APA problem. That's not what our cases say. So you're right. The board isn't required to choose one construction or the other, but if they go a different path, they have to give notice and the opportunity to be heard. That's the Exonix case and Qualcomm and SAS and several others that have been cited. So it's just a fairness point. We should have the opportunity to argue that it wasn't coextensive because of those flow controllers and that it wasn't close enough because of the intervening flow path. Isn't that the whole issue in this case though? I mean, claim construction is just a tool to get you to the result. And the whole question was whether Carpinen or whatever was prior art. And the thing about that piece of prior art was the intervening structures. That's the end game here. That shouldn't have been a surprise that we were going to get a claim construction that decided, resolve that issue. Right? I don't see the surprise. The surprise was proximity. How close it was, was never briefed. And we, you know, the discussion about how close is close enough, that's an intensely factual determination. We should have been able to have our experts talk about it and argue it. Fred pointed to the stuff in the appendix where you did make a comment that suggested that you had a view of that. Well, we had a view that intervening structure was, as the ITC found, was not along where it was separated by another flow path. Where you have two flow paths, and one is next to the backlight and another one is on the other side of that flow path. The flow path that's next to the backlight, that's the one that's along the backlight. And that's what the invention was here. Thank you. Thank you. The case is submitted.